MANUEL PEÑA BURGOS, Petitioner, *v.* DISTRICT COURT OF PUERTO RICO, BAYAMÓN SECTION, FERNANDO GALLARDO DÍAZ, JUDGE, Respondent; PANAX FOOD STORES, INC., Intervener.

No. 1927.   Argued June 1, 1952.—Decided April 30, 1956.

*Justo A. Casablanca* for petitioner.   *Rodolfo F. Aponte* and *F. Fernández Cuyar* for intervener.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

On April 19, 1950, Panax Food Stores, Inc., interevener herein—which shall be hereinafter called Panax—filed an ordinary mortgage foreclosure proceeding [1] in the Bayamón District of the District Court of Puerto Rico against Luis F. Balaguer and his wife, Dolores Peña, for the collection of a mortgage note for $5,000,[2] payable on demand. To secure this note they had constituted on the same date a voluntary first mortgage on a building [3] erected on reclaimed lands belonging to The People of Puerto Rico, which was not recorded in the Registry of Property.

On April 20, 1950, at the request of Panax and in order "to secure the effectiveness of the judgment sought by attaching the mortgaged property and recording the attachment in the Registry of Property so as to be protected against any rights that a third party may acquire in the property before judgment is rendered," the court directed that an order of attachment be issued to the Registrar of Property of Bayamón to record the attachment on the real property in question, for the sum of $4,000 principal, $80 of accrued interest,

---

[1] The action was correctly labeled by the court an action of debt because the mortgage claimed is not recorded.

[2] It was alleged in the complaint that on the date the action was brought the defendants had paid the sum of $1,000, and that they owed on that date $4,000 principal plus interest at 6 percent from December 16, 1949.

[3] The following is a description of the building:

"URBAN: Two-story apartment building, of reinforced concrete with concrete roof, having a frontage of fifty (50) feet and a depth of fifty (50) feet. It consists of eight (8) residential apartments, four (4) of which are on the main story and four (4) on the second story. It is known by the name of 'Shangri-La Apartments.' It is bounded on the North by San Juan Bay, on the South by lands owned by Marcos Caneja, on the East by lands belonging to the Government of the United States of America (Army Terminal), and on the West or front by Fifth Street of Barrio Sabana of the municipal district of Guaynabo. It is erected on reclaimed lands belonging to The People of Puerto Rico."

and $500 for costs and attorney's fees. The order was issued on that same date and presented for registration [4] on April 20.

On May 3, 1950, Manuel Peña Burgos, petitioner herein, moved for an extension of 30 days to intervene in the action, which was granted by the court, alleging that he had a preferred credit against the defendants. On May 8 Panax requested that the latter's default be entered, which was granted the following day.

On June 8, Peña Burgos filed a complaint in intervention alleging, briefly, that on September 12, 1941, Luis F. Balaguer and Dolores Peña executed "a deed of obligation to bearer for the sum of $8,000, interest, and an additional sum for costs and attorney's fees"; that on July 15, 1948, he paid to the defendants the sum of $5,000, and they delivered to him "an obligation to bearer signed on August 18, 1944, with interest thereon, and $250 for costs and fees"; that both obligations encumber a certain property owned by defendants Luis F. Balaguer and Dolores Peña, which he described as "lot situated in Pueblo Viejo, municipal district of Guaynabo," describing its boundaries, and setting forth that the property in question contained three structures; [5]

---

[4] The entry of presentation bears No. 164 of Day Book 46 of Guaynabo. The attachment was recorded on May 9, 1950 at folio 72, volume 40 of Guaynabo, property No. 2078, entry letter "A", "with the curable defects that the property is not recorded in favor of the defendants and that a copy of the complaint in the action is not attached." Regarding the propriety of the registration of the attachment in the Registry of Property, even if the property was not recorded, see *López v. Martínez Hnos. & Co., S. en C.*, 45 P.R.R. 516.

[5] The description of the property, as it appears from the complaint in intervention, is as follows:

"URBAN: Lot situated in Pueblo Viejo, municipal district of Guaynabo, Puerto Rico. It is bounded on the North, along an extension one hundred and fifty-three (153) feet and eight (8) inches long, by the bay of San Juan, Puerto Rico, and lands belonging to the reservation of the United States of America; on the South, along an extension one hundred twenty (120) feet long, by a mangrove belonging to the reservation of the United States of America; on the East, along an extension sixty-three (63) feet eight (8) inches long, by another mangrove belonging

that with respect to the $8,000, an entry was made on September 1941 in the Registry of Property, at folio 154, volume 23 of Guaynabo, property 1339, registration "A"; that on April 6, 1950, he filed in the District Court of the Judicial District of San Juan an action against defendants Luis F. Balaguer and Dolores Peña, claiming the sum of $13,000 with interest, and an additional sum of $1,000 for costs and attorney's fees, of which "due record was entered in the Registry of Property and judgment was entered on April 24, 1950 and that the mortgage sought to be foreclosed by Panax was a second mortgage or encumbrance on one of the three real properties described by the intervener in his complaint.

Panax answered admitting some of the facts and denying others, setting up as affirmative defenses, among others: (1) that if the deed and obligations mentioned by intervener in his complaint had been executed, such documents "are null and void since they are documents issued by the defendants to the bearer without consideration"; (2) that the intervener was not a bona fide owner of the obligations in question; (3) that the action filed by intervener in the District Court of the Judicial District of San Juan against Luis F. Balaguer and Dolores Peña claiming those obligations was not based on a bona fide transaction, "and that such action is a sham by the defendants to prevent plaintiff from collecting its legitimate credit," it being "the product of collusion between defendants and intervener to defeat plaintiff's legitimate claim."

---

to the reservation of the United States of America; and on the West, along an extension one hundred ninety (190) feet long, by Desembarcadero Street of the ward of Pueblo Viejo of Guaynabo. The described property contains three structures: a two-story concrete house having a frontage of twenty (20) feet and a depth of twenty (20) feet, which is erected on the Northeast corner of the lot; another one-story house constructed of concrete and imported wood with zinc roof, having a porch overlooking the San Juan bay; and another two-story concrete structure erected on the Southeast of the lot, having a shed alongside the building sixteen (16) feet long by thirty (30) feet on the rear."

On August 9, 1950, Panax requested the intervener to answer certain interrogatories [6] pursuant to Rule 33 of the Rules of Civil Procedure, and on November 17, in view of the latter's failure to answer, the complaint in intervention was dismissed at plaintiff's request, there remaining in the action only the original parties thereto with the default entered against defendants.

On January 12, 1951, the court held a hearing in order to hear plaintiff's evidence, and on the 23d day of that month it rendered judgment ordering the defendants to pay to plaintiff the sum of $4,000 principal, interest at 6 percent from December 17, 1949 until the same was paid in full, and $500 for costs, expenses, and attorney's fees, as agreed upon.

An order of execution of judgment having been issued, the marshal proceeded to sell at public auction the property attached by Panax, to which the bid was awarded,[7] and the deed of judicial sale was executed in its favor on April 20, 1951.

On April 20 the intervener again appeared of record, invoking the court's discretion to grant leave "to defend it-

---

[6] The record shows the answer to those interrogatories given on May 9, 1951 and filed in court on the same date, *i. e.*, after judgmen' was rendered and the public sale was held and the deed of judicial sale executed in favor of Panax. In the answer, petitioner states that he is the father of Dolores Peña, the wife of codefendant Balaguer, and that the order of attachment obtained by him in the action against the latter brought in the District Court of the Judicial District of San Juan was recorded in the Registry "on April 16, 1950."

[7] The minutes of the public sale certified by the marshal of the lower court disclose the following:

"On the date and hour set for the sale there appeared plaintiff Panax Food Stores, Inc., through its attorney, Lic. Rodolfo F. Aponte, and defendant Luis F. Balaguer, personally.

"At the opening of the sale the marshal made known that that morning Lic. Justo A. Casablanca, on behalf of Mr. Manuel Peña Burgos, had delivered to him three documents bearing the number of this case, relative to an alleged third-party claim upon real property, consisting of a sworn statement made by Mr. Manuel Peña Burgos, a bond in favor of Panax Food Stores, Inc., and a notice to this corporation of the filing of such documents. Thereupon I delivered copy of those documents to

self adequately," "in a plenary suit and an opportunity to hear the parties." On May 11, after hearing the parties and with plaintiff's consent, the lower court entered an order granting leave "to file a complaint in intervention, notice of which must be served [by Peña Burgos] on the party [Plaintiff], the judgment rendered in this case to remain in force until otherwise provided by the court."

On May 18, in a complaint by a third party with a better right,[8] Peña Burgos reproduced substantially the averments recited above, made in his complaint in intervention, which were answered by Panax essentially in the same manner as in the main action.

In view of this state of affairs, Panax filed a "Motion for Deposit of Rent" in which it alleged that the real property claimed by plaintiff Manuel F. Peña was, at the time Panax acquired it by sale, "in possession of Manuel F. Peña and/or of Luis F. Balaguer and his wife, Dolores Peña, who have been and still are in possession of same and perform acts of dominion and receive the rent therefrom," to the prejudice of Panax, and urging that the third party and the tenants be ordered to deposit in court, every month, the rent from such property, to be delivered by the court to such party as may ultimately "succeed in establishing a better right" to the property, otherwise that "the third party give a bond for such sum as the court may deem reasonable" to guarantee to Panax the payment of the rent in the event the third party's action does not prosper. From the order

---

Lic. Rodolfo F. Aponte, who objected to the stay of the sale. From an examination of the Third-Party Claim upon Personal and Real Property Law of March 14, 1907 (Sess. Laws, p. 308), it is evident that the documents filed by Mr. Manuel Peña Burgos do not comply with the requirements of this Act as to real property, and that the marshal has no authority to stay the public sale announced, wherefore notice was given that the same would be executed."

[8] The averments in this as well as in the previous complaint are more proper of a third-party claim of ownership than of a complaint by a third party with a better right, based on a previous adjudication to the third party of the property sold to intervener in this case.

of the lower court granting Panax' motion for the deposit of the rent, the third party appealed to this Court requesting certiorari. We issued the writ.

■■ We are not called upon in this appeal to make any decision on the ownership rights of the parties. The intervener obtained in the respondent court a judgment in its favor, and, upon execution thereof, it was awarded at the public sale the property previously attached to secure the effectiveness of the judgment, the title to which petitioner herein now claims in a complaint in intervention. The latter sought without success to stay the public sale—see footnote 7—by erroneously following before the marshal the procedure provided by law for third-party claims upon *personal property*. In the case of real property, the order of execution could be stayed only "by means of an injunction" —§ 16 (a) of the Act to provide for the trial of the right to real and personal property, approved March 14, 1907, as amended. Since the third party failed to do this, the sale was carried out, the property adjudicated to Panax, and the corresponding deed executed in its favor.

That is the title challenged by petitioner in his complaint in intervention. Whether his claims shall prevail or not, is a question we cannot pass upon in this appeal. But the title vested in Panax created in its favor a legal situation which the third party cannot invalidate by mere allegations of a better title. And if petitioner, before prevailing over plaintiff in the action, could only stay the order of execution and its legal consequences by giving sufficient bond and complying with the other provisions of the Law of Injunctions, as required by the Act of third-party claims *supra* in the case of real property, there is no doubt that he could not continue to receive the rent from the property adjudicated and sold to plaintiff[9] without giving bond to secure adequately

[9] This is not a case of attachment of rent to become due or unearned rent from leases under the doctrine announced in *Cruz* v. *District Court*, 70 P.R.R. 303.

its return to the latter. Yet, he continued to receive the rent for some time until the respondent court, at Panax' request, caused its order for the deposit of rent to be enforced, subject to the final adjudication of the parties' right to the real property in the third-party proceeding brought by petitioner.

The writ will be quashed.